IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CORNERSTONE CAPITAL MANAGEMENT, LLC and JOSEPH T. PROFIT II,<br><br>Defendants. | Civil Action File No.<br>07-CV-0274 Story |

**RECEIVER'S FINAL REPORT AND MOTION TO (A) APPROVE ACCOUNTING; (B) ESTABLISH RESERVE & MAKE DISTRIBUTIONS; (C) ABANDON REMAINING RECORDS & ASSETS; AND (D) DISCHARGE AND RELEASE RECEIVER**

COMES NOW, S. Gregory Hays, the duly authorized and acting Receiver herein (the "Receiver"), by and through his undersigned counsel of record, and herewith makes and files his Final Report and Motion to Approve Accounting; Establish Reserve and Make Distributions; Abandon Remaining Records and Assets; and Discharge and Release Receiver (the "Motion") and shows as follows:

## I.    SUMMARY

The Receiver is pleased to report to the Court that the Receiver has successfully completed his work as Receiver herein. In this Final Report, the Receiver seeks to discharge and complete his reporting obligations to the Court, to obtain necessary authorizations to complete his administration of the assets under

ATLANTA:5013271.2

Receivership and to be formally discharged as Receiver herein. Assuming that the Receiver is authorized to make the final distributions requested herein, investors in this case will receive a return of approximately Fifty-Five Percent (55%) of the principal amounts of their investments, which the Receiver believes is an outstanding result in a case such as this.

## II.    FINAL REPORT

1.    Cornerstone Capital Management, LLC ("Cornerstone") was acting as a commodity pool operator and commodity trading advisor from approximately May 2005 through January 24, 2007. Cornerstone and its CEO, Joseph T. Profit, II ("Profit"), were involved in an investment scheme whereby they persuaded investors to invest in a commodity pool by misrepresenting the rates of return Cornerstone generated for its pool participants, the value of the assets it managed and the financial condition of Cornerstone itself.

2.    This action commenced on January 31, 2007 through the filing of a Complaint by the Plaintiff Commodity Futures Trading Commission ("CFTC"), which, inter alia, sought to freeze the assets of Cornerstone and Profit in connection with Cornerstone's and Defendant Profit's operation of a hedge fund known as the "Cornerstone Icon Fund".

3.    On January 31, 2007, this Court, at the request of the CFTC, issued an Ex Parte Statutory Restraining Order to Freeze Assets, Preserve Books and Records, Authorize Expedited Discovery and Appoint a Temporary Receiver

- 2 -

(the "SRO") pursuant to Section 6c of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 13a-1. The SRO directed the Receiver to marshal and take control of the assets of Defendant Cornerstone and of Mr. Profit and the assets of certain affiliates of Defendant Cornerstone, including the assets of Cornerstone Icon Fund L.P., Cornerstone Icon Fund Ltd., Cornerstone Capital Management, Inc. and Cornerstone Brokerage Services. Moreover, the SRO directed the Receiver to perform an investigation and accounting, and to manage and preserve the assets during the pendency of this action. Immediately after his appointment, the Receiver hired the law firm of McKenna Long & Aldridge LLP to serve as counsel and Hays Financial Consulting LLC to serve as his financial consultants.

4. On February 7, 2007, Defendant Cornerstone and Mr. Profit entered into a Consent Order of Preliminary Injunction which extended the asset freeze and Receivership.

5. On February 20, 2007, the Receiver filed his Preliminary Status Report wherein he reported that he had taken control of the Receiver Estate and begun the investigation and accounting directed by the Court.

6. On April 3, 2007, the Receiver and the CFTC filed a Joint Motion for Order to Show Cause as a result of the lack of cooperation they received from Mr. Profit and one of his associates, Mr. Felix Maye, in their investigation and accounting. The Court entered an Order Directing Immediate

- 3 -

Compliance on April 26, 2007, which required the Receiver to file a Report Regarding Compliance with the Order to Show Cause. In accordance with this requirement, the Receiver submitted a Report Regarding Compliance on May 11, 2007, a Supplemental Report Regarding Compliance on July 17, 2007, and a Second Supplemental Report Regarding Compliance on November 8, 2007. As discussed in those reports, the Receiver's investigation in this matter was severely hampered by the continued misconduct by Mr. Profit, which included, among other things, concealing information about a private jet trip taken to Switzerland, lying about the existence of a laptop computer used in connection with the Defendant's business activities, not credibly accounting for documents he admitted he removed from Cornerstone's New York offices, lying under oath regarding the existence of bank accounts in his or his wife's name, and lying about his current his current business activities and sought to engage in activities prohibited by the SRO.

7.       On November 8, 2007, the Receiver submitted his Report in Connection with Plan of Distribution ("Distribution Report"). The Distribution Report details the asset summary and recoveries in this case and is incorporated herein by reference.

8.       Specifically, as detailed in the Distribution Report, the Receiver had frozen and taken control of bank or brokerage accounts held or maintained by the Defendants totaling $1,974,611.71.

- 4 -

9.      In addition to the bank and brokerage accounts recovered by the Receiver, the Receiver was able to identify and recover other assets for the benefit of the Receivership Estate totaling $129,928.09.

10.     The Receiver identified a $120,000 transfer made by the Defendants to lawyers in Switzerland for the purpose of establishing a Swiss subsidiary.  Through negotiations with the Swiss lawyers, the Receiver was able to recover $104,745.91.

11.     The Receiver identified a joint bank account relating to a security deposit posted by Cornerstone for its New York office.  The Receiver entered into an agreement to divide the security deposit and terminate the Sublease Agreement.  This resulted in a recovery of $16,564.48 for the Receivership Estate and a release of a potentially significant claim.

12.     The Receiver discovered that the Defendants transferred approximately $100,000 to Joseph Profit, Sr., the father of Defendant Joseph Profit, Jr., approximately one month prior to the SRO.  Shortly after his appointment, the Receiver took action to freeze the bank account into which these funds were deposited at SunTrust Bank; however, Profit Sr. had removed all but $6,134.46 from this account prior to the entry of the SRO.  Upon further investigation of this matter, the Receiver determined that Profit, Sr. had, in fact, invested $100,000 of his own money in Cornerstone.  If these funds had not been

- 5 -

removed from the Cornerstone Estate prior to the entry of the SRO, Profit Sr. would have been entitled to a claim and would have received approximately fifty-five percent of this sum as a distribution. The Receiver therefore determined that the net harm to the Receivership Estate from this transfer was approximately $40,000 to $45,000 and the Receiver therefore made a demand upon Profit, Sr. for this sum. After careful review of Profit. Sr.'s financial position which indicated he could not return this sum to the Receiver and a determination that Profit, Sr. was not involved in soliciting third parties to invest in Cornerstone, the Receiver agreed to accept the remaining balance in the SunTrust Account, $6,134.46, in full and final satisfaction of any claims against Profit, Sr. On June 16, 2008, the Receiver and Profit, Sr. agreed to resolve the dispute. Under the terms of the settlement agreement, Profit, Sr. relinquished to the Receiver the account the money was transferred to and its remaining balance, and the Receiver released its claims against Profit, Sr. This resulted in a recovery of $6,134.46 for the Receivership Estate.

13. During the course of his investigation of this matter, the Receiver identified a wire transfer in the amount of $150,000.00 that was made from the Cornerstone Icon Fund, L.P. to Jet One Jets, Inc. ("Jet One") on January 5, 2007. The Receiver thus commenced an action against Jet One to avoid the transfer on August 28, 2007 and to demand an accounting of the funds paid. After

- 6 -

investigating the matter further, the Receiver determined that Jet One received approximately $20,000 of that transfer as a brokerage fee and that the remaining $130,000 was used to pay for a private, round trip airplane flight for Defendant Profit and Felix Maye between Geneva, Switzerland and Atlanta, Georgia. The Receiver also determined that $130,000 is close to the "going rate" for such round trips on the type of airplane used. Although the extravagance of this expenditure is clear, the round trip flight service was actually provided by an innocent, third party provider. However, the Receiver did determine that the $20,000 fee paid to JetOne was excessive and should be recouped in whole or in part. In January, 2008, the parties agreed to settle the matter. Under the terms of the settlement, Jet One agreed to pay the Receivership Estate a total of $7,500 and to provide the Receiver with a default judgment in the amount of $15,000, minus any payments made, in the event that Jet One defaulted under the terms of the agreement. Jet One did default under the terms of the agreement after making only $2,500 in payments. As a result of the default, the consent judgment in the amount of $12,500 was entered in the District Court on July 14, 2008. On September 19, 2008, the Receiver moved to domesticate the judgment in the Supreme Court of the State of New York, County of Nassau. This Judgment has now been domesticated. At about the time that the domestication action was filed, several news reports appeared indicating that JetOne Jets was being acquired by another, larger

- 7 -

company. However, this acquisition has now fallen through and the Receiver does not believe it is prudent to wait any longer for a recovery on this judgment and that it is highly unlikely that there will be any recovery on this judgment. The Receiver would request that he be authorized to collect on this judgment in the future if funds become available to satisfy the Judgment and, if there is such a recovery, to distribute any proceeds to investors on a pro rata basis, less only the expenses of making such a distribution.

14.    As stated in the Receiver's Report Submitted in Connection with Plan of Distribution, the Receiver was concerned that very few real estate, personal property and other assets were available for recovery from Defendant Cornerstone or Mr. Profit for the benefit of creditors. Mr. Profit's home is leased and searches of public records did not result in the identification of other assets. Desks, chairs and tables in Cornerstone's New York office were frozen, but they did not have any substantial value and have been abandoned to the landlord as part of the settlement set forth above.

15.    The Receiver has determined that there are not any tax liabilities which would be payable from the assets held in the Receivership.

16.    The Receiver has completed his investigation of the affairs of the Defendants and of the Cornerstone Icon Fund. As reported in the Receiver's Report Submitted in Connection with Plan of Distribution, the Receiver has

- 8 -

conducted an extensive funds tracing and financial analysis based upon the documents received by him from the Defendants and from numerous subpoenas issued to third parties, including several financial institutions and banks. The Receiver has frozen and taken possession of all the assets of the Defendants and pursued all viable claims against third parties. The Receiver has determined that the Cornerstone Icon Fund never generated any profits or returns. Further, the Receiver identified investor claims and trade creditor claims and instituted a process for claims owed in this matter. The Receiver does not believe that there are any remaining assets to be recovered for the benefit of investors.

17.    The Receiver believes that it is now an appropriate time to complete his administration of this case and for him to be discharged as Receiver.

## III.   MOTION TO APPROVE ACCOUNTING

18.    In this Court's SRO entered January 31, 2007, and the Consent Order of Preliminary Injunction entered February 7, 2007, the Defendants were directed and agreed, among other things, to provide a "full accounting of all funds and assets both within and outside of the United States which are held by the Defendants, on their behalf, or under their direct or indirect control, whether jointly or singly, or in which they have an interest, and a full accounting of all funds and assets that the Defendants received from clients or investors and the ultimate use or current location of those funds or assets". Mr. Profit failed to adequately provide this accounting. The Receiver has been forced to undertake completing the

- 9 -

accounting, which was required by Mr. Profit, based on the Receiver's own investigation of Cornerstone and Mr. Profit. The vast majority of documents the Receiver obtained in connection to this investigation were received through his own efforts, including subpoenaing bank records and other financial institutions.

19. The Receiver has conducted an extensive funds tracing and financial analysis based upon the documents received by him. The Receiver believes he has accounted for all monies raised and spent by the Defendants herein in connection with the Cornerstone Fund. A true and correct copy of this report, which contemplates payment of the final compensation and expense reimbursement requested by the Receiver, his accountants and attorneys is attached hereto as Exhibit "A".

## IV. MOTION TO ESTABLISH RESERVE AND MAKE DISTRIBUTION

20. The Receiver proposes to distribute the remaining funds in the Receivership Estate in accordance with the Order Approving Receiver's Plan of Distribution entered December 7, 2007 which is incorporated herein by reference The Accounting attached at Exhibit "A" contemplates making distributions in accordance with this Order. All funds will be distributed to investors, except only such fees and expenses which may be approved by this Court to be paid to the Receiver and his counsel and a reserve of $7,000 to be used by the Receiver to make final distributions and to pay other associated expenses related to the closing of the Estate (the "Reserve"). The Receiver would request authority from this

- 10 -

Court to distribute the Reserve in his discretion and without further review or approval by the Court.

21.    The Receiver, his financial consultants and attorneys last filed applications seeking compensation in this case on December 5, 2007. The Receiver, his financial consultants and attorneys have incurred additional expenses since that time in concluding their administration of this Receivership. Contemporaneously with the filing of this Final Report, the Receiver and his counsel are filing requests for approval of compensation and reimbursement of expenses. The Receiver is requesting compensation in the amount of $6,057.50. The Receiver's counsel is requesting compensation in the amount of $52,213 and reimbursement of expenses in the amount of $808.04. The Receiver's firm, Hays Financial Consulting, LLC, which was employed to render accounting, financial, investigative and administrative services in connection with the Receiver's duties are requesting compensation in the amount of $38,061 and reimbursement of expenses in the amount of $683.53. The Receiver asserts that the requested professional fees have been necessary for the preservation of the Receivership Estate, that they are reasonable and that the hourly rates charged therein are consistent with the prevailing hourly rates charged in the Atlanta business and legal community.

- 11 -

22.    Assuming that this Court approves the compensation and reimbursement of expenses requested by the Receiver and his professionals and the Reserve, the Receiver proposes to make a final distribution of the sum of $167,104.03 to creditors of the Receivership Estate pursuant to the terms and conditions set forth in the Plan of Distribution.

## V.    MOTION TO ABANDON REMAINING RECORDS & ASSETS

23.    At present, the Receiver is in possession of voluminous records of the Defendants in this case including bank account records and other information procured by the Receiver pursuant to the SRO. The Receiver asserts that the continued storage and retention of these documents is unnecessary and burdensome and proposes to abandon and dispose of same.

## VI.    MOTION TO DISCHARGE AND RELEASE RECEIVER

24.    Upon completion of the payment of all professional fees and the distributions required under the Distribution Order, the Receiver will file a report with the court indicating the distributions have been made. The Receiver requests that, subject to the terms and conditions set forth herein that he be released and discharged as Receiver in this case. The Receiver further requests that he be released and discharged from any and all claims and causes of action which might be brought against him for matters arising from his administration of the assets turned over to him and, to the extent that any person or entity nevertheless seeks to pursue and claim or action against the Receiver arising out of his duties as

- 12 -

25.     Receiver herein, the Receiver requests that this Court retain jurisdiction to hear any such claim.

## VII.  RELIEF REQUESTED

26.     In order to complete his administration and to close this case, the Receiver requests that this Court enter an Order releasing and discharging him as Receiver and authorizing and directing him to do the following:

a.     Pay such professional fees and expenses as may be authorized by this Court;

b.     Establish the Reserve as requested herein;

c.     Distribute the balance remaining after payment of items (a) and (b) above to the creditors of the Receivership Estate;

d.     Collect the judgment entered against JetOne Jets;

e.     To abandon the records set forth above;  and

f.     File a report with this Court certifying that the distributions have been made

- 13 -

WHEREFORE, the Receiver requests that his Final Report be approved, that

he be granted the relief requested herein and for such other and further relief as

may be just and proper.

Respectfully submitted this 5th day of December, 2008.


McKenna Long & Aldridge LLP


s/ Henry F. Sewell, Jr.
Henry F. Sewell, Jr.
Georgia Bar No. 636265
S. Elizabeth Hall
Georgia Bar No. 141718

303 Peachtree Street, N.E.
Suite 5300
Atlanta, GA 30308
404-527-8120 (Telephone)
404-527-4198 (Fax)
Email: hsewell@mckennalong.com

Attorneys for the Receiver S. Gregory
Hays, Receiver

- 14 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

U.S. COMMODITY FUTURES
TRADING COMMISSION,

        Plaintiff,

v.

CORNERSTONE CAPITAL
MANAGEMENT, LLC and JOSEPH T.
PROFIT II,

        Defendants.

Civil Action File No.
07-CV-0274 Story

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing Receiver's Final Report And Motion To (A) Approve Accounting; (B) Establish Reserve & Make Distributions; (C) Abandon Remaining Records & Assets; And (D) Discharge And Release Receiver by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage thereon addressed to:

Daniel A. Caldwell, III
Office of United States Attorney
Northern District of Georgia
75 Spring Street, S.W.
600 United States Courthouse
Atlanta, Georgia 30303

Joseph T. Profit, II
1544 Runnymeade Road NE
Atlanta, GA 30319

ATLANTA:5013271.2

Luke Marsh, Esq.
Tracey Wingate, Esq.
U.S. Commodity Futures Trading
Commission
1155 21st Street NW
Washington, DC 20581

      This 5th day of December, 2008.

s/ Henry F. Sewell, Jr.
_____
Henry F. Sewell, Jr.
Georgia Bar No. 636265
S. Elizabeth Hall
Georgia Bar No. 141718

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000    (telephone)
(404) 527-4198    (facsimile)
Email: hsewell@mckennalong.com

Attorneys for S. Gregory Hays,
Receiver